IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CHARLES M. MOODY,**

    **Plaintiff,**

**v.**                                                 **CIVIL ACTION NO. 2:11cv26**
                                                      **(Judge Bailey)**

**CLINICAL DIRECTOR MACE LEIBSON, et al.,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this case on April 1, 2011 by filing a civil rights complaint against the above-named defendants. On April 4, 2011, the plaintiff was granted permission to proceed *in forma pauperis*. The plaintiff paid his initial partial filing fee on July 6, 2011. On July 25, 2011, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time. Summonses were issued that same day.

On November 14, 2011, the defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment with a memorandum in support. A Roseboro Notice was issued on November 15, 2011. On December 5, 2011, the plaintiff filed a response in opposition to the defendants' motion.

### II. The Complaint

The plaintiff was a federal inmate who was released from custody on January 4, 2012. His

complaint centers around his incarceration at FCI Gilmer and, in particular, the period of time from December 19, 2009, through January 5, 2010. The plaintiff filed his complaint against the above-named defendants pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. § 1983 and authorized suits against federal employees in their individual capacities. Although not specifically articulated, a liberal interpretation of the plaintiff's complaint indicates that he is accusing the defendants of being deliberately indifferent to his medical needs. For relief, the plaintiff seeks compensatory damages and punitive damages totaling eighteen million dollars.

### III. The Answer

For their answer, the defendants have filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. As support therefore, the defendants assert the following:

    A. The plaintiff cannot establish a claim for deliberate indifference to his medical condition;

    B. Supervisory liability is inapplicable in a <u>Bivens</u> action;

    C. The plaintiff has failed to state a claim against Lt. Sliger;

    D. Defendant Nolte is a Public Health Service Employee and is therefore entitled to absolute immunity;

    E. The plaintiff's claim about his medical records not being transferred fails to state a claim; and

    F. The defendants are entitled to qualified immunity.

### IV. The Plaintiff's Response

In his response, the plaintiff reiterates the time line of his medical treatment at FCI Gilmer. The plaintiff alleges that his complaint meets the subjective and objective components required to

demonstrate deliberate indifference.

## V. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for

failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### B. Summary Judgment

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule

4

56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

## VI. Analysis

### A. Health Services Administrator E. Boram

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citations omitted). Thus, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3d Cir. 1988). Some personal involvement on the part of the defendant and a causal connection to the harm alleged must be

5

shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case.[1] "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcraft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1948 (2009). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own conduct." Id. at 1948-49.

In this case, plaintiff does not allege any personal involvement in his medical care on the part of Ms. Boram. Rather, he alleges that he explained his symptoms to her, but she would not make a doctor see him and told him it was a cold and over the counter medications from the commissary would suffice. (Doc. 1, p.6). However, Ms. Boram was an administrative supervisor and did not provide medical treatment to the plaintiff during the period in question. Instead, she relied on the medical staff to make medical decisions and treat the plaintiff. Accordingly, she should be dismissed as a defendant.

B. **Lt. Sliger**

The plaintiff alleges that on Wednesday, December 30, 2009, he awoke around 11:00 p.m. unable to breathe and having severe pain in his lungs. He was escorted to the A.W. complex, where Lt. Sliger screened him and relayed his illness to Dr. Mace-Leibson at her home. He returned and told the plaintiff that the doctor said to send him back to his cell and have him sign up for sick call

---

[1] In a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3d Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 297, 401 (11th Cir. 1986).

6

Monday morning. Clearly, Lt. Sliger is not a medical provider and merely relayed information to and from Dr. Mace Leibson. Lt. Sliger cannot be held responsible for the actions of other employees and properly relied on the opinion of the medical provider to whom he spoke. See Bratcher v. Tillman, No. 5:10cv90, 2011 WL 4924258* 3 (N.D.W.Va. Oct. 17, 2011) (nonmedical personnel may rely on the opinion of medical staff regarding the proper treatment of inmates). Accordingly, Lt. Sliger should be dismissed from this action.

**C. James Nolte, FNP-BC**

The plaintiff alleges that on December 28, 2009, nurse James Nolte responded to his sick call request for chest pain, rapid breathing, lightheadedness and a dry cough. The plaintiff further alleges that defendant Nolte advised him to drink plenty of fluids and use vapor rub and prescribed cold medication from the commissary. The plaintiff continues by noting that when he approached defendant Nolte and told him that the cold meds did not help he seemed at a loss. Upon explaining that he had an asthma attack on February 28, 2008 and was prescribed a nebulizer treatment, albuterol inhaler, steroid inhaler, and prednisone tablets, defendant Nolte was hesitant to provide treatment, and he was forced to go another week struggling to breathe.

Defendant Nolte is a Commissioned Officer in the United States Public Health Service. Title 42 U.S.C. § 233(a) provides that the exclusive civil remedy available to any individual against a commissioned officer of the U.S. Public Health Service for any actions pertaining to medical, surgical, dental or related functions is an action pursuant to the Federal Tort Claims Act (28 U.S.C. § 2672). Section 233(a)

> protects commissioned officers or employees of the Public Health Service from being subject to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead. The United States thus in effect insurers designated public health officials by standing in their place financially when

7

they are sued for the performance of their medical duties.

Cuoco v. Moritsugu, 222 F.3d 99, 108 (2d Cir. 2000); see also United States v. Smith, 499 U.S. 160, 170 n.11 (1990) (42 U.S.C. § 233 is one of several statutes passed to provide absolute immunity from suit for Government medical personnel for alleged malpractice committed within the scope of employment); Carlson v. Green, 446 U.S. 14, 20 (1980) (Congress explicitly provides in 42 U.S.C. § 233(a) that the FTCA is a plaintiff's sole remedy against Public Health Service employees); Apple v. Jewish Hosp. and Medical Center, 570 F. Supp. 1320 (E.D.N.Y. 1983) (motion for dismissal of the action against the defendant doctor, a member of the National Health Corps. granted and the United States substituted as defendant, and case deemed a tort action). Therefore, pursuant to 42 U.S.C. § 233(a), defendant Nolte enjoys absolute immunity from personal liability for all claims arising from the medical care he provided the plaintiff, and he must be dismissed as a defendant in this action.

### D. Ellen Mace Leibson, D.O., Joshua Hall, R.N., Pamela Kyle, R.N.

To state a claim under the Eighth Amendment, the plaintiff must show that defendants acted with deliberate indifference to serious medical needs of a prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable

state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[2]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth, 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F. Supp. 283 (S.D. Ala. 1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F. Supp. 905, 907 (D. Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by

---

[2] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kan. 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F. Supp. 2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

The plaintiff alleges in his complaint that the clinical director at FCI Gilmer, Dr. Mace Leibson, let him go without medical care for two weeks, even though he repeatedly signed up for sick call because his chest hurt when he breathed. In addition, the plaintiff alleges that he saw nurses on December 25, 2009, December 27, 2009, December 29, 2009 and twice on December 30, 2009, with complaints of difficulty breathing and severe chest pain. However, each time the evaluation by the nurse was "normal," and Dr. Mace Leibson reviewed and signed off on the nurses evaluation. However, Dr. Mace Leibson never examined him, even though she was his primary caretaker and was aware that he was a chronic care patient, who suffered from asthma. The plaintiff complains that Dr. Mace Leibson did not see him until January 5, 2010, two weeks after his initial complaint, at which time she diagnosed him as having a lung infection and told him that his asthma was being triggered by inflammation. The plaintiff contends that Dr. Mace-Leibson determined that his regular albuterol inhaler alone was not sufficient treatment and prescribed thirty minutes of inhaling a nebulizer and prednisone tablets. The plaintiff maintains that he continued taking the steroid and albuterol inhaler for nine months. The plaintiff maintains that but for Dr.

Mace Leibson's failure to examine him when he first started complaining, she could have diagnosed the lung infection earlier and prevented any irreversible lung damage.

The medical records establish that the plaintiff was examined by Dr. Mace-Leibson in the chronic care clinic on December 18, 2009. During this visit, the plaintiff reported that he was not having any problems with asthma. Dr. Mace Leibson's evaluation revealed that his lungs were within normal limits at that time, and his prescription for albuterol was renewed with refills for 180 days. On December 27, 2009, the plaintiff reported to health services with a complaint of a cough and chest pain when he inhaled. He was examined by Joshua Hall, R.N., who found the plaintiff's lungs clear and his oxygen was 99% on room air. He was instructed to follow up with sick call as needed. Dr. Mace Leibson cosigned the medical entry the following day. On December 29, 2009, the plaintiff again reported to health services indicating his chest hurt. He was examined by Pamela Kyle, R.N. The exam revealed that the plaintiff was in no apparent distress, his blood pressure was normal and his oxygen level was again at 99% in room air. The plaintiff was given an x-ray and EKG on that same day. Both tests were negative. On November 30, 2009, the plaintiff was examined in health services by Joshua Hall, R.N. The examination revealed normal findings. The plaintiff was in no apparent distress, oxygen level was 97% on room air, and he was instructed to follow-up with sick call as needed. Dr. Mace Leibson cosigned the evaluation on December 31, 2009. On January 1, 2010, the plaintiff was allowed to go to health services by his unit officer based upon a complaint of chest pain. Upon arrival in health services, the plaintiff's chief complaint was dizziness. He was evaluated by Pamela Kyle, R.N. The exam findings were normal. Again, he was in no apparent distress, and his oxygen level on room air was 98%. He was instructed to follow-up with sick call as needed. On January 4, 2010, the plaintiff was examined

in Health Services for reports of chest pain. Joshua Hall, R.N. was the examining medical provider on that date. The exam revealed the plaintiff's lungs to be clear, and he was in no apparent distress. His oxygen level on room air was 99%. A follow-up exam with Dr. Mace Leibson was scheduled for the following day. On January 5, 2010, Dr. Mace Leibson examined the plaintiff, The exam revealed that the plaintiff was alert, in no apparent distress, and his lungs were clear bilaterally. Although the plaintiff could have gone without any treatment other than supportive care and over the counter medication for any pain. Dr. Mace Leibson provided a one-time nebulizer treatment and some steroids to calm any inflammation/chest pain. The diagnosis given was viral bronchitis/pleurisy due to his complaint of chest pain. (Doc. 44-2).

Here, assuming *arguendo* that the plaintiff's asthma and or viral bronchitis/pleurisy is a serious medical condition[3], thus satisfying the first element of an Eighth Amendment claim, the medical record cited above clearly establishes that the plaintiff received adequate medical supervision at FCI Gilmer for his condition. He was seen by a medical provider six times between December 27, 2009 and January 5, 2010. At no time during those examinations did the plaintiff present with symptoms of distress or impairment in his breathing capacity. Furthermore, to the extent that the plaintiff may be alleging that his medical care at FCI Gilmer amounted to malpractice, ordinary medical malpractice based upon negligence in providing care does not state a claim under the Eighth Amendment. See Estelle, *supra* at 106. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Furthermore, the large majority of cases alleging medical Eighth Amendment violations concern the denial of medical care

---

[3]In fact, Dr. Mace Leibson notes that the plaintiff's diagnosis of viral bronchitis/pleurisy was not a serious medical condition. Moreover, she notes that the plaintiff was noncompliant over the years with his steroid inhaler which is to be used to prevent symptoms, not to be used only when symptoms arise. (Doc. 44-2, pp. 2-3).

to a prisoner rather than the provision of substandard care; "no care," rather than "bad care."  See e.g., Holmes v. Sheahan, 930 F.2d 1196 (7th Cir.), cert. denied, 502 U.S. 960 (1991).  Here, even if the plaintiff received "bad care," he did receive care.  Accordingly, nothing in the record or in the plaintiff's complaint establishes any facts sufficient to support a finding that the defendants have been deliberately indifferent to his medical needs, and accordingly, the plaintiff's complaint as it relates to his Eighth Amendment claims under Bivens should be dismissed for failure to state a claim.

### E. Medical Records

As a final claim for relief, the plaintiff alleges that his medical records were not transferred with him to his new facility when he left FCI Gilmer.  He indicates that he later received most of those records after filing a Freedom of Information Act request.  However, the job responsibilities of the named defendants does not include transferring medical records.  Instead, that is the responsibility of the medical record technicians.  Moreover, the plaintiff does not alleges that he suffered any harm as the result of his medical records not being transferred.  Accordingly, this final claim fails to state a viable claim under Bivens and should be dismissed.

## VII. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' motion to dismiss or, in the alternative, for summary judgment (Doc. 42) be **GRANTED**, and the plaintiff's complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915A and 1915(e) for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may filed with the Clerk of the Court written objections identifying the portions of the

Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

**DATED**: March 30, 2012

*David J. Joel*
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE